Johnson, J.
The plaintiffs’ declaration contained two counts. l he first is so martraciaily drawn as to make it very questionable whether it would stand the test of a rigid examination. It imports, however, to charge the defendant on a bill of exchange, drawn by him on Cotchet and M’lver, payable to one John Bates simply, without the word order or hearer, and the evidence is understood to be confined to this count alone. The second is the general count for money had and received; and the question submitted by the motion in arrest of judgement, is, whether the plaintiffs can, as indorsers, maintain an action against the defendant as the drawer of such a bill.
Choses in action were not negotiable at common law, and by the custom of merchants no bills of exchange were nego. tiabie, except such as weye payable to order or bearer ; and, consequently, the indorseeof a bill not negotiable could neither maintain an action m his own name against the drawer or m-dorser. The stat. of Ann (P. L. 93,) made no alteration the law in this respect, and was only intended to put promissory notes on the same footing as bills of exchange were by the law merchant, by enabling the indorsees of notes payable to order or bearer, to maintain actions against the maker or indorser in their own names; nor does the act of 1778, (1 Brev. Dig. 90,) authorise the assignee of securities not negotiable, to sue the assignor. The evil recited in the preamble of that act, is the necessity that the assignees were under of suing in the name of the obligee of a bond, or the payee of a note or bill, for the recovery of the sums due thereon, and the remedy provided, is, that they may thereafter sue in their own names, styling themselves, in the writ to be issued, the assignee of the bond, note or bill. The evil, it will be observed, was the necessity the assignee was under of suing in the name of the obligee of the bond, or the payee of the note or bill, and the remedy provided is that he may sue in his own name; so that the name of the assignee is a mere substitute for the name of the obligee of the bond, or the payee of the note or bill — an idea utterly inconsistent with the right of the assignee to sue the obligee of the bond, or the payee of the bill or note, who must necessarily be the assignor; the question must, therefore, be resolved by the general law.
In Bay v. Freazier, 1 Bay, 66, it was held that where a bond had been assigned for value received, making its contents payable to the assignee or order, tbc assignee might maintain an *656 ac^on against tho assignor, as on a bill of exchange drawn ou tbe bond. But the doctrine of this case was shaken in Parker v. Kenedy, Ib. 398, where, upon a very full and learned in-vesligation of the whole subject, it was held by a majority of the court that the assignee could not maintain an action against the assignor of a bond assigned in blank; and in Walker v. Scott, referred to in Twitty ads. Todd, 1 Nott & M’Cord, 261, it seems to have been entirely overruled, and from that time down to the present the decisions have been uniform. Thus in the case of Twitty ads. Todd, before referred to, it was held that the defendant was not liable as tho indorser of a note for whiskey payable to himself or order, because not being for money it was not negotiable under the statute ; and in Wilson v. Mullen, 3 M’Cord, 236, Judge Nott, who delivered the opinion, lays down the rule expressly, that the assignee of a note not negotiable, incurs no liability by an assignment in the usual form. The same point was ruled in the late case of Benton v. Gibson, 1 Hill, 56, which arose on a note for the payment of money.
These, it is true, are all cases on the assignment of bonds and unnegotiable notes, and not bills of exchange, but I apprehend they are all governed by the same principle. A bill of exchange is nothing more than an order drawn by one man on another requesting him to pay a sum of money to a third, and so is the regular indorsement of every note or bill, and the assignment of every bond. I know that in practice the phraseology is much varied, but to be effectual it must import a direction to the obligor of the bond, the maker of the note or the drawer of the bill, to pay the sum expressed in the bond note or bill to the assignee or indorsee of the note or bill, so that the drawer of a bill of exchange stands precisely in the same relation to the indorsee, as the assignee of a bond docs to the assignor, or the indorser of a note does to the indorsee, and their rights must bo determined by the same general rule. If therefore the indorser of an unnegotiable promissory note, or the assignor of a bond, is not liable to the indorsee or as-signee, neither is the drawer of an unnegotiable bill liable to the assignee of the payee. As before remarked, a bill of exchange is simply an order drawn by one man on another requesting the payment of a sum of money to a third, and there is nothing in it which imports any undertaking on the part of the drawer to pay even the payee tho sum expressed; his right to recover against the drawer is founded on the consideration paid, and excludes the idea of his undertaking to pay his in-dorsee. There is therefore nothing in the terms of the contract itself which raises the obligation, but it arises out of an artificial rule of commerce which interprets the direction to *657 pay to the order of the payee, into an agreement on the part of the drawer to subject himself to the same liability which he incurred as to the payee, but that reasoning will not apply when the word ‘ order5 is omitted. I am therefore of opinion that the first count is bad in law, and that so far as that is concerned, the judgement ought to be arrested.
But in point of form there is no objection to the common count for money had and received, and the established rule in our Courts, is that when the verdict is general, the judgement will not be arrested if any one count in the declaration is good. The judgement cannot therefore be arrested, nor has the defendant moved for a new trial; but it is said in Calhoun ads. M’Means, 1 Nott & M’Cord, 425, that the Court may, in its discretion, order a new trial, on a motion in arrest of judgement, and certainly there is no case which would more fully justify the exercise of such a discretion than the present, when it is apparent that in law there is no foundation for the action.
A new trial is therefore ordered.
O’Neall and Harper, Js. concurred.